WARREN R. BUCKLEY ET AL.

v.

THOMAS B. HOLMES.

1. BREACH OF CONTRACT—MEASURE OF DAMAGES.—Where contracts for the sale of chattels are broken by the vendor failing to deliver the property according to the terms. of the bargain, the general rule is that the measure of damages is the difference between the contract price and the market value of the article at the time when it should be delivered, and if at the time of delivery the article has not risen in value, the vendee, having lost nothing, can recover nothing. This rule applied to brokers and commission men.

2. PLEADING SPECIAL DAMAGES.—Special damages are not implied by law, do not necessarily accrue from the injury complained of, and must be specially stated and claimed in the declaration. The declaration in this case *held* insufficient to sustain a verdict for special damages.

3. CONTRACT FOR FUTURE DELIVERY.—Where the undertaking on September 20th, was for the purchase of 40,000 bushels of corn for future delivery, and under the contemplated contract the corn could not have been demanded before the last of October, and on September 22d appellants gave appellee notice that they had not purchased the corn when appellee bought on the 22d at an advanced price, and it was claimed that appellants knew of the sale by appellee on the 19th, of 20,000 bushels of October corn (by which sale no delivery could be made before the 1st of October, and such delivery could not be compelled before the last of October), and at the time for delivery corn was lower than on the 20th, the date of the contract, *held*, that the damages are merely nominal, the market price being lower in October than on the 20th; that any loss appellee may have suffered from making a sale on the 19th at 55 cents a bushel in connection with his act in buying three days thereafter at 57¼ cents per bushel to fill such contract was occasioned by his own conduct, and did not grow out of its terms or any supposed assumption of it by appellants.

APPEAL from the Circuit Court of Peoria county; the Hon. D. McCULLOUGH, Judge, presiding. Opinion filed June 9, 1886.

Mr. WILLIAM JACK and Messrs. PUTERBAUGH & PUTERBAUGH, for appellants; as to measure of damages, cited Smith v. Dunlap, 12 Ill. 184; Hadley v. Baxendale, 9 Exch. 341; V. & M. Ry. Co. v. Ragsdale, 46 Miss. 458; Prosser v. Jones,

41 Ia. 674; 3 Sutherland on Damages, 298; Williams v. Reynolds, 6 B. & S. 495 ; Mayne on Damages, 18; Story on Agency, § 221; Cothran v. Ellis, 107 Ill. 413; Brown v. Muller, 7 L. J. Exch. 319 ; Kadish v. Young, 108 Ill. 170 ; Hibbard v. Western Union Tel. Co., 33 Wis. 558.

Mr. LAWRENCE HARMON, for appellee ; as to agency, cited Ewell's Evans on Agency, 3; Story on Agency, § 33 ; Ward v. Warfield, 3 La. Ann. 471 ; 1 Parsons on Contracts, 85 ; Swenright v. Richardson, 19 Law Times, 10 ; Hamilton v. Cunningham, 2 Brock. 350.; Arrott v. Brown, 6 Whart. 9; Frothingham v. Everton, 12 N. H. 239.

Where the principal suffers actual injury he is entitled to full indemnity, and is entitled to receive such sum in damages as will place him in as favorable condition as he would have been in, had the contract and duty been fulfilled : Sutherland on Damages, 56; Brown v. Arrott, 6 Watts & S. 402; Frothingham v. Everton, 12 N. H. 239; Amory v. Hamilton, 17 Mass. 103 ; Harvey v. Turner, 4 Rawle, 223; Magnum v. Dinsmore, 62 N. Y. 35.

The presumption is that plaintiff, if the 40,000 bushels of corn had been bought by defendants for him, would have sold at the advanced price in the market: Leonard v. N. Y., etc., Tel. Co., 41 N. Y. 544; Williams v. Reynolds, 118 E. C. L. 495 ; Rittenhouse v. Ind. Line of Tel., 43 N. Y. 463; Wilson v. L. & Y. Ry. Co., 99 E. C. L. 632 ; Andrew Passenger v. Thornburn, 32 N. Y. 634; Cutting v. Grand Trunk Ry. Co., 13 Allen, 381; Stone v. Codman, 15 Pick. 301 ; Ward v. N. Y. Cent. R. R., 47 N.Y. 34 ; Sisson v. C. & Y. R. R. Co., 14 Mich. 489.

The general rule is, that the party injured by a breach of a contract is entitled to recover all his damages, *including gains prevented, as well as losses sustained*, provided they are certain, and such as might naturally be expected to follow the breach: Griffin v. Colver, 16 N. Y. 489, 491 ; Ward v. N. Y. C. R. R. Co., 47 N. Y. 29 ; Mesmore v. N. Y. Shot and Lead Co., 40 N. Y. 422.

BAKER, J. In Sedgwick on Damages, page 260, the rule

for the measure of damages as between the buyer and seller of personal property is stated thus: "Where contracts for the sale of chattels are broken by the vendor failing to deliver the property according to the terms of the bargain, it seems to be well settled, as a general rule, both in England and the United States, that the measure of damages is the difference between the contract price and the market value of the article at the time when it should be delivered, upon the ground that this is the plaintiff's real loss, and that with this sum he can go into the market and supply himself with the same article from another vendor. It follows from this rule, that if at the time fixed for the delivery, the article has not risen in value, the vendee having lost nothing, can recover nothing." See also, Smith et al. v. Dunlap, 12 Ill. 184.

This rule would seem to be applicable to commission men and brokers, where, through their fault, they have failed to make purchases directed by their customers and undertaken by them; if they are placed in the shoes of vendors, then, unless under some circumstances of special damage, ample compensation will be afforded injured parties. The rule as stated has been extended to telegraph companies in cases where the failure to buy has been caused by default of such companies. This rule for the assessment of damages would, when applied to the facts of this case, give to appellee nothing but nominal damages; for it is admitted that the market price of corn at its time of delivery under the contract that should have been made, was some fourteen cents per bushel less than it was at the opening of the Board of Trade in Chicago on the morning of September 20th; so that, if such contract had been entered into and afterward carried into effect by delivery and payment, there would have been very considerable loss to appellee. General damages are such as the law implies and presumes to have accrued from the wrong committed; and as applied to the case in hand, are, as we think, such as are stated in the rule quoted from Mr. Sedgwick. Special damages are not implied by law, do not necessarily accrue from the injury complained of, and must be specially stated and claimed in the declaration, before the plaintiff will be permitted to give

evidence of them.   The averments of this declaration are that appellee " was deprived of divers great gains and profits and suffered divers great losses in consequence of the default." The divers great gains and profits would refer only to such profits as would naturally accrue from an increased market value at the date for delivery over the contract price.   There being no particular statement of special damages, we think it was error to admit proof of such damages over the objections of appellants; and also, that the declaration is insufficient to sustain a verdict for such damages.

But, if we waive the insufficiencies of the declaration, the really important question in the case is with regard to the correctness of the rule as held by the trial court with reference to the measure of damages, as indicated by the instructions given and refused.   If the commission undertaken had been for the purchase of corn for present delivery, then the rule of damages would have been the difference between the price when the order should have been filled, and that which the plaintiff would have been obliged to pay at the same place, within a reasonable time after notice of the failure to buy, in order to purchase the like quantity and quality of corn.   True v. Int. Tel. Co., 60 Maine, 9; Baker v. Drake, 53 N. Y. 211.   This is upon the ground that under the intended contract he would be entitled to the immediate possession of the subject-matter of the contemplated purchase, and may place himself, using due diligence, in *statu quo*, at the cost of the party in default.

Here, however, the undertaking was for the purchase of corn for future delivery, and under the contemplated contract the corn could not have been demanded before the last day of October.   It is plain that unless some peculiar fact or circumstance existed calling for special damages, the general rule allowing the difference between the contract price and the market price at date of delivery, would afford full and ample compensation for the wrong done.   The substance of the claim made by appellee seems to be that the loss of profit occasioned by the breach of a contract can be allowed when the data of estimation are so definite and certain that they

can be ascertained reasonably by calculation, if the party in default had notice at the time the contract was made that such damages would ensue from non-performance. As applied to a certain class of cases, this claim is well made. But if it is meant to claim that in case the purchase had been made on the 20th of September appellee might have effected a re-sale on the 22d of September, or on some other of the days prior to the maturity of the contract, when the price of corn was higher than the opening price of the 20th, and the profits that might so have been realized can be recovered, then such claim is not well founded. The exact point was decided in Williams v. Reynolds, 6 B. & S. 495, and in Hibbard v. W. U. Tel. Co., 33 Wis. 558, both cases involving the question of sales for future delivery. Such damages do not naturally flow from the breach of the contract, nor are they such as were within the contemplation of the parties at the time the contract was entered into, and so do not fall within either branch of the rule laid down in the leading case of Hadley v. Boxendale, 9 Exch. 341. In Williams v. Reynolds it distinctly appeared that it was the practice at Liverpool for purchasers of cotton (the article involved in that transaction) to re-sell before the time for delivery, and that a re-sale of the cotton had in fact been effected subsequent to the making of the original contract, and prior to the date for delivery.

But it is urged that appellants knew of the sale on the 19th of September of the 20,000 bushels of October corn by appellee at fifty-five cents, and that he wanted 20,000 of the 40,000 bushels ordered to cover the short corn he had so sold, and therefore, from the nature of that contract and the circumstances, appellants had notice that damages of the character assessed by the jury would result from non-compliance with their undertaking to buy. Let us assume that appellants by their default became responsible to respond to any legitimate damages growing out of this contract of the 19th. The amount of special damages allowed by the verdict of the jury was $1,100; and it was assessed upon the basis of the difference between the opening price of the 20th and the price at which appellee purchased on the 22d—a difference of two and three fourth

cents a bushel. It is therefore evident that the loss of profit of two and three fourth cents a bushel was assessed not only for the 20,000 bushels of short corn sold on the 19th, but for the other 20,000 bushels included in the intended purchase of the 20th.

Our present inquiry, however, is in regard to the contract of the 19th. The terms of that agreement were such that no delivery of grain under it would be made before the 1st of October, and such delivery could not be compelled before the last of October; consequently the only damage suggested by its provisions was that at the time it could be required to be complied with, corn might be higher than the contract price. In respect to the liability imposed by the terms of that contract the broker or commission merchant could discharge his obligation by tendering the corn at its maturity. Gregory v. Wendell, 40 Mich. 432. Assuming it was a valid contract and contemplated an actual sale, and was not a mere gambling transaction, it can not be said that it was according to the natural and usual course of things, that the vendor, where the article of commerce was such as could readily be procured at any time upon the open market, would, long before the maturity of the contract and when no delivery could be made thereunder, buy the corn upon a high and excited market; it is true he might do such things, but it would not follow naturally and as matter of course. Nor was it according to the usual course of things that a contract for the delivery of corn on October 30th should be settled on the basis of the market price of corn on September 22d. Nor can it reasonably be supposed to have been in the contemplation of both appellants and appellee, at the time the former agreed to make the purchase of the 20th of September, as the probable result of the breach of such agreement, that the market price of the 22d of September would govern as a price paid for corn to be delivered the last of October. There is equally as good ground for saying that the price that prevailed upon any one of the other days intervening before the date fixed for delivery was in contemplation. Appellee could not anticipate that corn would be lower on the 22d of September than on the 30th of October.

It follows then that this damage of two and three fourth cents a bushel which was assessed by the jury, is not within the rule that is recognized by the courts for the ascertainment of damages for breach of contract, even in respect to the short corn sold. Any loss that appellee may have suffered from making sale, on the 19th of September, of corn for delivery in October, at fifty-five cents a bushel, in connection with his act in buying three days thereafter corn at fifty-seven and one fourth cents per bushel, to fill such contract, was occasioned by his own conduct, and did not grow out of its terms or any supposed assumption of it by appellants. The evidence clearly shows that the requirements of that sale might readily have been complied with, not only without detriment, but with a profit of several thousand dollars.

It results from what we have said, that the rulings of the court upon the instructions representing the measure of damages were erroneous. The second instruction directed the assessment of special damages which were not claimed in the declaration or even admissible in any state of pleadings, under the facts of the case.

The refused instruction was correct, and should have been given.

The judgment is reversed and the cause remanded.

Reversed and remanded.